**Eyer v. Raines**

*Jackson M. Sigmon,* for plaintiffs Eyer.

*George A. Hahalis,* for plaintiff Raines.

*Andrew L. Herster, Jr.,* for defendant Bethlehem Millwork, Inc.

*Stanley E. Stertz,* for defendants Formica Corporation and American Cyanamid Company.

*Ralph W. Litzenberger,* for additional defendant Fox.

WILLIAMS, JR., J., January 23, 1974.—These actions in trespass, consolidated for trial, were brought to recover damages resulting from a fire which occurred on February 21, 1968, in the City of Bethlehem. Plaintiff Raines is the owner of the property, while the Eyers occupied a second floor apartment. Defendant Fox was a carpenter engaged in remodeling the Raines' kitchen. The corporate defendants (herein Formica) manufactured and sold a contact adhesive

which allegedly caused the fire. Trial was limited to the issue of liability.

Formica's liability was based upon the strict liability provisions of section 402(A) of the Restatement, 2d, Torts. At the close of plaintiffs' cases, Formica's motion for a compulsory nonsuit was granted and the propriety of that ruling is now before the court.

Trial proceeded as to defendants Fox and Raines in August term, 1968, no. 201, and resulted in a verdict in favor of Eyer solely against Fox. His motions for judgment n.o.v. and for a new trial challenge the sufficiency of the evidence to establish the cause of the fire.

Due to an oversight of court and counsel, the case of Raines against Fox as additional defendant in April term, 1971, no. 4, was not submitted to the jury and Raines seeks a new trial against Fox. This motion must be granted.

I. Plaintiffs' Motion to Remove Compulsory Nonsuit as to Formica

In passing upon the propriety of the entry of the nonsuit, we are held to the following standard: "A nonsuit can only be awarded in a clear case and the plaintiffs must be given the benefit of all favorable evidence and all reasonable inferences therefrom and all conflicts must be resolved in favor of the plaintiff": DeLio v. Hamilton, 227 Pa. Superior Ct. 581, 308 A. 2d 607, 608 (1973).

Considered in the light of the above standard, the salient facts are as follows:

Defendant Fox was employed by Wanda V. Raines to renovate her apartment at 128 East Union Boulevard, Bethlehem, Pa. Also residing at this address were plaintiffs Genevieve and Robert M. Eyer, tenants of Wanda V. Raines.

In the course of the renovations, Fox, a home remodeler with some 25 years' experience, was to

install Formica countertops and backsplash in the kitchen of the apartment. In order to perform this work, Fox purchased a one gallon can of Formica brand adhesive no. 140, brushable contact cement, from Bethlehem Millwork, Inc., three or four days prior to the morning of the fire. Formica 140 brand was the only type of cement recommended to Fox by Bethlehem Millwork's employe. He was informed that the product was dangerous to use if the instructions on the label were not followed and that he should provide adequate ventilation.

The labeling on the Formica Brand Contact Cement one gallon can contained, inter alia, the following warnings printed on the container itself:

1. Appearing in 3/16 inch black latters upon a solid red background at the top rear of the can:

"CAUTION: FLAMMABLE MIXTURE. DO NOT USE NEAR FIRE OR FLAME" "USE ONLY IN WELL VENTILATED AREA"

2. Appearing in 1/16 inch red letters upon a white background at the bottom rear of the can:

"DANGER! Extremely Flammable. Vapor Harmful. Harmful or fatal if swallowed. Keep away from heat, sparks and open flame. Turn off all sources of ignition in the area (electric motors and appliances, fans, clocks, refrigerators, gas pilot lights, etc.). Do not smoke while using. Use with adequate ventilation. Avoid breathing vapor. Avoid contact with skin or eyes. Keep container tightly closed when not in use. If swallowed, do not induce vomiting. Call a physician immediately."

3. Appearing on the lid of the can:

(a) in 1/4 inch silver letters on a red background: "DANGER!"

(b) in 5/32 inch silver letters on a red background: "EXTREMELY FLAMMABLE"

(c) in 1/8 inch red letters on a silver background:

"BE SURE TO PROVIDE ADEQUATE VENTILATION"

(d) in 3/32 inch black letters on a silver background:
"READ INSTRUCTIONS BEFORE OPENING AND USING"

4. Appearing in 1/8 inch red letters on a white background on the front of the container:

"DANGER! Extremely flammable. Vapor harmful. Harmful or fatal if swallowed. See warnings on other side."

On the day prior to the fire, Fox read the instructions on the container and then used a cupful of the cement to fasten a piece of Formica backsplash to the wall above the gas stove and a corner cabinet in the kitchen. He did not extinguish the gas pilot light or disconnect any of the electrical applicances in the kitchen. The next morning Fox reread the instructions on the can, provided the same amount of ventilation that he had on the day before, and again did not extinguish the gas pilot light or disconnect any electrical appliances. After opening the container, he spread a puddle of about a cupful of cement on a three-by-three-foot countertop area immediately adjacent to the gas stove. As he was doing so and approximately one minute after he had first poured the cupful of cement, the entire puddle flared up into flames which eventually caused the damages to the building and its contents.

Plaintiffs' expert witness, Dr. James Faller, a professional engineer on materials, testified that in his opinion the Formica 140 cement had dangerous propensities and that the warnings displayed on the container were inadequate to properly alert the average user or consumer of those dangerous propensities despite the fact that the warning lable conformed to

Federal regulations concerning that type product. Dr. Faller stated that a more adequate warning would be:

"Vapors may ignite explosively."

"This product could cost you your life, if it is used in any way contrary to the instructions. The vapors will ignite explosively without warning. The ignition may take place far from the working area. Do not use this product without being certain that you completely understand and can fully apply all the safety precautions outlined on the label."

Dr. Faller also testified that Formica 140 cement and its vapors were flammable, but remained in a passive state unless some source of ignition were introduced within a short period of time after the can was opened. In the expert's opinion the "most probable" cause of ignition in the instant case was the unextinguished gas pilot light. Dr. Faller admitted that the label on the container specifically stated that gas pilot lights should be turned off prior to use of the cement. Finally, the expert testified that if the gas pilot light had been turned off under the facts of the instant case, the danger of ignition would have been further minimized.

Plaintiffs' cause of action is based upon section 402(A) of the Restatement of Torts, 2d, which was adopted in Pennsylvania in Webb v. Zern, 422 Pa. 424 (1966). Section 402(A) deals with the absolute liability of the seller of a product for physical harm to the user or consumer[1] and states as follows:

---

[1] A preliminary objection in the nature of a demurrer was filed on behalf of defendants Formica and Cyanamid founded solely on the proposition that plaintiffs were neither "users" nor "consumers" of the product within the ambit of Restatement 2d, Torts, §402(A) and that §402(A), as adopted in Pennsylvania, does not permit recovery on the theory of strict liability by persons who are

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

There was no evidence that the Formica Brand no. 140 contact cement was defectively manufactured and the mere fact that it was flammable does not establish that it was defective within the meaning of §402(A): Borowicz v. Chicago Mastic Co., 367 F. 2d 751 (7th Cir., 1966). There was testimony that the solvents which give the cement its quick drying characteristic were highly volatile with a low flash point, a composition which could clearly be characterized as dangerous. The test of liability, however, is whether the

---

neither "consumers" nor "users." The preliminary objections were denied and dismissed on June 15, 1971, in an opinion and order by the court (Palmer, P.J.), holding that nonusers and nonconsumers may recover under 402(A) where the likelihood of injury to such plaintiffs, arising from the use of the product and from the particular risk which makes it "unreasonably dangerous," is reasonably foreseeable. See Oehler v. Davis, 223 Pa. Superior Ct. 333 (1972), permitting recovery in a strict liability action "by anyone encompassed within the scope of the [supplier's] duty": Wagner v. Studt, 60 D. & C. 2d 743 (1973).

product was unreasonably dangerous since "Many products cannot possibly be made entirely safe for all consumption": Comment (i).

Plaintiffs' expert did not testify that in his opinion the contact cement was unreasonably dangerous, but on the contrary stated that the product, while flammable, is in a passive state until a source of ignition is added. Their argument, however, is that the product is unreasonably dangerous because the warnings on the container of cement were inadequate to warn a user of the dangers associated with its use.

The critical issue, therefore, is the application of the principles set forth in comment (j) which states, in pertinent part:

"In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use . . . Where warning is given, the seller may reasonably assume that it will be read and heeded; and *a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.*" (Italics supplied.)

Plaintiffs' expert testified that, although the warnings on the Formica can conformed to Federal regulations for this type product, in his opinion the label could still not be understood by the ordinary user and was not sufficient to warn him of possible dangers. In effect, he said that consumers had become desensitized to such warnings and suggested that the warning devised by him but not in commercial use would be adequate.

Unfortunately for plaintiffs and their case, Dr. Faller did not testify that the contact cement would be unsafe if the directions and warnings that were provided on the container had been followed, or that the warnings failed to include the dangerous condition

which caused the fire. All of the evidence indicates that the contractor ignored the label. Thus, Fox was advised by the seller to read the warnings and to take the necessary precautions; he admitted reading and understanding the instructions both on the day before and on the day of the fire; he provided only limited ventilation and did not turn off any of the sources of ignition referred to on the label, including the gas pilot light immediately adjacent to the area in which he spread the cement.

Although a nonuser may recover under section 402(A),[2] we hold that he may not do so where the direct user has ignored or disregarded the manufacturer's instructions and the product is reasonably safe to use if such instructions are followed. Fox's abnormal use is a defense in this strict liability action: Bartkewich v. Billinger, 432 Pa. 351, 247 A. 2d 603 (1968); Borowicz, supra; Annotation, 76 A. L. R. 2d 9; cf. Murray v. Wilson Oak Flooring Co., Inc., 475 F. 2d 129 (1973).

Plaintiffs rely on Crane v. Sears, Roebuck & Co., 32 Cal. 754 (1963), as support for their proposition that the trial court erred in not submitting the question of the adequacy of the warnings to the jury. Although we believe Crane is legally indistinguishable from the case before us, we choose to reject its result. Of course, we are in no way bound to follow the decision of an intermediate appellate court of another State. Moreover, we believe that the Pennsylvania Supreme Court has taken a position similar to that which we espouse here, as is evidenced in the analogous case of Bartkewich v. Billinger, supra. While Bartkewich is not directly on point, it is a strict liability case which stands for the proposition that a manufacturer is entitled to believe that his product will be used in the

---

[2] Footnote 1, supra.

normal manner and that the manufacturer need not be an insurer for the extraordinary risks a user might choose to voluntarily take.

## II. Defendant Fox's Motion for Judgment n.o.v.

Fox originally filed a motion for a new trial as well as for judgment n.o.v. with respect to the Eyer verdicts; however, the former motion was abandoned at oral argument and has not been briefed. Our discussion, therefore, is limited to the sufficiency of the evidence to support the verdict against him.

Fox argues that there was insufficient evidence to establish that his negligence in failing to follow the instructions for use of the contact cement was the proximate cause of the fire. He points out that plaintiffs' expert could only state that the "most probable" source of ignition was the gas pilot light and that this testimony did not meet the standard required by Niggel v. Sears, Roebuck & Co., 219 Pa. Superior Ct. 353 (1971), viz., that the expert witness must assert that the result in question actually came from the cause alleged.

In the present case, however, expert testimony was not required to establish causation. Such proof may be direct or circumstantial, from lay or expert testimony: Forry v. Gulf Oil Corporation, 428 Pa. 334 (1968). The test set forth in Smith v. Bell Telephone Co. of Pa., 397 Pa. 134 (1959), is that where the circumstantial evidence leads to a reasonable conclusion placing liability on the defendant, the case must be submitted to the jury. Here, the jury could reasonably conclude, given the nature of the contact cement and its use by Fox in the immediate vicinity of an open gas pilot light in contravention of the directions, that the fire resulted from his negligence. The motion must be denied.

## ORDER OF THE COURT EN BANC

And now, January 23, 1974, in accordance with the foregoing opinion:

1. The motions of plaintiffs Eyer and Raines to remove the compulsory nonsuits entered in October term, 1970, no. 249, and April term, 1971, no. 4, in favor of Bethlehem Millwork, Inc., Formica Corporation and American Cyanamid Company are denied and dismissed.

2. The motion of defendant Fox for judgment n.o.v. in August term, 1968, no. 201, is denied and dismissed and judgment is entered in favor of Robert M. Eyer and Genevieve R. Eyer. If the amount of damages are not stipulated, the parties are directed to proceed to an assessment thereof.

3. The motion of plaintiff Raines for a new trial against Fox, additional defendant, in April term, 1971, no. 4, is granted.